UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OCTAL INC.,<br>OCTAL SAOC-FSZ<br><br>               Plaintiffs,<br><br>      v.<br><br>United States,<br>               Defendant. | Court No. 20-03698 |

# COMPLAINT

Plaintiffs OCTAL Inc., and OCTAL SAOC-FSZ (collectively "OCTAL" or "Plaintiffs"), by and through their counsel, state the following claims against Defendant, the United States:

1. Plaintiffs seek judicial review of the U.S. International Trade Commission's ("USITC") affirmative final material injury determination in the antidumping investigation of polyethylene terephthalate ("PET") sheet from Oman, covering the period from January 2017 to November 2019. *See Polyethylene Terephthalate (PET) Sheet From Korea and Oman; Determination,* 85 Fed. Reg. 55,862 (Sep. 10, 2020) ("Final Determination"); *see also* Polyethylene Terephthalate (PET) Sheet from Korea and Oman, Inv. Nos. 731-TA-1455, 731-TA-1457, USITC Pub. 5111 (Sep. 2020) ("Final Report"). On the same day the USITC issued its affirmative final determination in the

investigation, the U.S. Department of Commerce ("Commerce" or the "Department") published notice of the antidumping duty order on polyethylene terephthalate sheet (PET sheet) from Oman. *See Polyethylene Terephthalate Sheet from the Sultanate of Oman: Anti-Dumping Duty Order*, 85 Fed. Reg. 55,824 (Sep. 10, 2020) ("AD Order").

## JURISDICTIONAL STATEMENT

2. The Court has jurisdiction over this action pursuant to 19 U.S.C. 1516a(a)(2)(A)(i)(II) and (B)(i) to review a final affirmative determination made by the USITC under 19 U.S.C. § 1671d. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

3. Plaintiff OCTAL Inc., is a U.S. importer of the subject merchandise. Plaintiff OCTAL SAOC-FSZ is a foreign producer and exporter of subject merchandise. Plaintiffs are, therefore, interested parties as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiffs fully participated in the proceeding being challenged. Accordingly, Plaintiffs have standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS OF THIS ACTION

4. The USITC published its affirmative final determination in the *Federal Register* on September 10, 2020. *See Polyethylene Terephthalate Sheet From the Republic of Korea and the Sultanate of Oman*, 85 Fed. Reg. 55,862 (Sep. 10, 2020). On the same day, the Department published notice of the AD Order. *See Polyethylene*

*Terephthalate Sheet from the Sultanate of Oman: Anti-Dumping Duty Order*, 85 Fed. Reg. 55,824 (Sep. 10, 2020). Therefore, Plaintiffs commenced this action within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

5. Plaintiffs filed their Summons for this action on September 29, 2020. Thus, Plaintiff timely filed this Complaint within 30 days of the filing of the Summons in this action, as required by the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) and Court Rule 3(a)(2).

## STATEMENT OF FACTS

6. The underlying agency proceeding began in response to the submission of a petition seeking the imposition of antidumping ("AD") duties on imports for PET sheet from Oman. *See* Polyethylene Terephthalate ("PET") Sheet from the Republic of Korea, Mexico, and the Sultanate of Oman—Petitions for the Imposition of Antidumping Duties (Jul. 9, 2019) (hereafter, "the Petition"). On August 19, 2019, Commerce initiated this investigation. *See Polyethylene Terephthalate Sheet From the Republic of Korea, Mexico, and the Sultanate of Oman: Initiation of Less-Than-Fair-Value Investigations*, 84 Fed. Reg. 44,854. (Aug. 27, 2019) (applicable Aug. 19, 2019).

7. In September 2019, the U.S. International Trade Commission ("USITC") rendered an affirmative preliminary injury determination, concluding that there was "reasonable indication that an industry in the United States is materially injured by reason of imports" of the subject products. *See Polyethylene Terephthalate (PET) Sheet from Korea, Mexico, and Oman*, Inv. Nos. 731-TA-1455, 731-TA-1457. USITC Pub. 4970 (Sep. 2019) (Preliminary).

8. On March 19, 2020, the USITC published its notice scheduling the final phase of the injury investigation. *See Polyethylene Terephthalate (PET) Sheet from Korea and Oman; Scheduling of the Final Phase of Anti-Dumping Duty Investigations*, 85 Fed. Reg. 15,796 (Mar. 19, 2020). Subsequently, the USITC issued questionnaires to all known U.S. producers, U.S. importers, foreign producers and exporters and U.S. customers of PET sheet.

9. Based on these questionnaire responses and other information on the record, the USITC Staff issued its Pre-hearing Report on June 30, 2020. Thereafter, all interested parties submitted pre-hearing briefs. A public hearing was held on July 14, 2020, followed by the submission of the parties' post-hearing briefs on July 21, 2020. The USITC Staff's Final Report was issued on August 6, 2020, and interested parties filed their Final Comments on August 24, 2020. *See Polyethylene Terephthalate (PET) Sheet from Korea and Oman; Scheduling of the Final Phase of Anti-Dumping Duty Investigations*, 85 Fed. Reg. 15,796 (Mar. 19, 2020).

10. On August 19, 2020, the USITC rendered its conclusion that the domestic PET sheet industry was materially injured by reason of PET sheet imports from Oman and Korea. This USITC decision was published in the *Federal Register* on September 10, 2020. *See Polyethylene Terephthalate (PET) Sheet From Korea and Oman*, 85 Fed. Reg. 55,862 (Sep. 10, 2020). The written views of the USITC, which include the USITC's rationale for its affirmative injury determination, are set forth in the USITC's report. *See* Polyethylene Terephthalate (PET) Sheet from Korea and Oman, Inv. Nos. 731-TA-1455, 731-TA-1457, USITC Pub. 5111 (Sep. 21, 2020) (Final). The antidumping

duty order was published on September 10, 2020. *See Polyethylene Terephthalate Sheet From the Republic of Korea and the Sultanate of Oman*, 85 Fed. Reg. 55,862 (Sep. 10, 2020).

**STATEMENT OF CLAIMS**

**Count One:** **The USITC's Conclusion Of Significant Adverse Volume Effects Is Not Supported by Substantial Evidence and Is Otherwise Not In Accordance With Law**

11. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 10.

12. Pursuant to 19 U.S.C. § 1677(7)(C)(i), the Commission is directed to "consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant."

13. In its Final Determination the USITC ignored substantial evidence that provided important context as to why the increase in imports from Oman could not be considered adverse, including, *inter alia*, substantial evidence that the largest customers believed that the type of PET sheet imported from Oman, referred as "DPET," was a very different PET sheet from that offered by U.S. producers and substantial evidence that the vast majority of the increase in imports from Oman consisted of increases by customers pursuant to long-term contracts that pre-dated the investigation period.

14. As such, the USITC's conclusion of adverse volume effects from imports from Oman is not supported by substantial evidence and is otherwise not in accordance with law.

**Count Two:** **The USITC's Conclusion Of Significant Adverse Price Effects Is Not Supported by Substantial Evidence and Is Otherwise Not In Accordance with Law**

15. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 14.

16. Under the statute, the Commission considers possible adverse price effects from subject imports on domestic prices from several perspectives. The Commission examines whether domestic prices have been "depressed" (in other words, have domestic prices declined), whether domestic prices have been "prevented" from increasing (in other words, are increasing domestic prices lower than would have been expected giving changing costs), and whether there has been "underselling" (in other words, have subject import prices been lower than comparable domestic prices). These perspectives are different ways to approach the overarching legal question of "the effects" of subject imports on domestic prices, and whether domestic prices have been adversely affected to a "significant" degree by subject imports.

17. The statute makes explicit that the focus is on the "the effect of" the subject imports on domestic prices, not domestic prices in isolation. Thus, if domestic prices are falling for other reasons, those falling prices are not "the effect" of subject imports and

cannot establish adverse price effects.  The statute also makes explicit that any price depression, price suppression, or price underselling must be to a "significant" degree.  Any underselling must be "significant price underselling."

18. The USITC ignored these statutory mandates in its analysis of whether subject imports from Oman were having adverse effects on the selling prices of U.S. producers.  As such, the USITC's conclusion of adverse price effects from subject imports from Oman is otherwise not in accordance with law.

19. In addition, the USITC's conclusion of adverse price effects from subject imports from Oman is also unsupported by substantial evidence.  In rendering its determination, the USITC ignored the fact that domestic industry prices increased over the full period, and declined only during periods of declining raw material costs, and therefore there was no price depression.  The USITC ignored the fact that prices increased relative to cost and therefore there was no price suppression.  And the USITC ignored the fact that, whatever underselling existed, there was no evidence that domestic prices were adversely effected by this underselling.  As such, the USITC's final determination is not supported by substantial evidence.

**Count Three:** **The USITC's Conclusion Of Significant Adverse Impact Is Not Supported by Substantial Evidence and Is Otherwise Not In Accordance with Law**

20. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 19.

21. In assessing whether subject imports are having an adverse impact on the domestic industry, the statute requires that the USITC consider "all relevant economic factors," and to do so in the context of "conditions of competition that are distinctive" to that industry. The USITC did not comply with this statutory instruction and therefore the USITC's final determination is otherwise not in accordance with law.

22. In addition, the USITC's conclusion of adverse impact from subject imports from Oman is also unsupported by substantial evidence. In rendering its determination, the USITC ignored the fact that the domestic industry had increasing robust profitability over the investigation period. The USITC ignored the fact that there was no correlation between trends in subject imports and domestic industry profitability. And the USITC ignored the fact that OCTAL's lower U.S. sales prices stemmed from lower production costs from a unique PET sheet production technology and scale. As such, the USITC's final determination is not supported by substantial evidence.

**Count Four:** **The USITC's Dismissal of Evidence That Any Underselling Was Not The Result of Dumping Is Not Supported by Substantial Evidence and Is Not In Accordance With Law**

23. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 22.

24. The statute requires that the USITC "evaluate all relevant economic factors which have a bearing on the state of the industry in the United States, including . . .the magnitude of the margin of dumping." 19 U.S.C. § 1677(C)(iii) (emphasis added) Such requirement reflects Congress' understanding that the level of dumping speak directly to the alleged unfair price advantage of subject imports.

25. In its final determination the USITC did not properly take into account that the dumping margin that the Commerce assigned to OCTAL was significantly less that the magnitude of the underselling by OCTAL. And therefore, any underselling by OCTAL was not the result of unfair dumping.

26. The USITC's failure to recognize the importance of this facts is otherwise not in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court enter judgment as follows:

(A) Enter judgment in favor of Plaintiffs;

(B) Hold as unlawful the USITC's final injury determination that is the subject of this Complaint,

(C) Remand this proceeding the USITC with instructions to publish revised final injury determination in conformity with the Court's decision; and

(D) Grant Plaintiffs such additional relief as the Court may deem just and proper.

          Respectfully submitted,

          /s/ Daniel L. Porter

          Daniel L. Porter
          James P. Durling

          **Curtis Mallet-Prevost, Colt & Mosle LLP**
          1717 Pennsylvania Avenue, N.W.
          Washington, D.C. 20006
          202-452-1717

          *Counsel for Plaintiffs*

Dated: October 7, 2020